No. 23-2644

===

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

===

MICHAEL J. BOST, LAURA POLLASTRINI,
and SUSAN SWEENEY,

*Plaintiffs-Appellants,*

v.

THE ILLINOIS STATE BOARD OF ELECTIONS; and
BERNADETTE MATTHEWS, in her capacity as the
Executive Director of the Illinois State Board of Elections,

*Defendants-Appellees.*

===

APPEAL FROM THE U.S. DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION, No. 1:22-CV-02754
THE HONORABLE JOHN F. KNESS

===

## *AMICUS CURIAE* BRIEF OF THE REPUBLICAN NATIONAL COMMITTEE
## AND THE NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE
## IN SUPPORT OF PLAINTIFFS-APPELLANTS FOR REVERSAL

===

TYLER R. GREEN
CONSOVOY MCCARTHY PLLC
222 S. MAIN STREET, 5TH FLOOR
SALT LAKE CITY, UT 84101
(703) 243-9423

THOMAS R. MCCARTHY
CAMERON T. NORRIS
CONOR D. WOODFIN*
CONSOVOY MCCARTHY PLLC
1600 WILSON BLVD., SUITE 700
ARLINGTON, VIRGINIA 22209
(703) 243-9423

*Application for admission pending

*Counsel for Amici Curiae*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2644

Short Caption: Michael Bost, et al v. Illinois State Board of Elections, et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
    Republican National Committee; National Republican Congressional Committee

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
    Consovoy McCarthy PLLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        None

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None

(4)    Provide information required by FRAP 26.1(b)  Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

---

Attorney's Signature: /s/ Thomas R. McCarthy       Date: October 8, 2023

Attorney's Printed Name: Thomas R. McCarthy

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☑  No ☐

Address: 1600 Wilson Blvd., Ste. 700

       Arlington, VA 22209

Phone Number: (703) 243-9423       Fax Number:

E Mail Address: tom@consovoymccarthy.com

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2644

Short Caption: Michael Bost, et al v. Illinois State Board of Elections, et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
    Republican National Committee; National Republican Congressional Committee

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
    Consovoy McCarthy PLLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        None

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None

(4)    Provide information required by FRAP 26.1(b)   Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

---

Attorney's Signature: /s/ Tyler R. Green         Date: October 8, 2023

Attorney's Printed Name: Tyler R. Green

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐   No ☑

Address: 222 S. Main Street 5th Floor

    Salt Lake City, UT 84101

Phone Number: (703) 243-9423         Fax Number:

E Mail Address: conor@consovoymccarthy.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2644

Short Caption: Michael Bost, et al v. Illinois State Board of Elections, et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

        ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
    Republican National Committee; National Republican Congressional Committee

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
    Consovoy McCarthy PLLC

(3)    If the party, amicus or intervenor is a corporation:

        i)    Identify all its parent corporations, if any; and

            None

        ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

            None

(4)    Provide information required by FRAP 26.1(b)  Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

---

Attorney's Signature: /s/ Cameron T. Norris        Date: October 8, 2023

Attorney's Printed Name: Cameron T. Norris

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: 1600 Wilson Blvd., Ste. 700

        Arlington, VA 22209

Phone Number: (703) 243-9423        Fax Number:

E Mail Address: cam@consovoymccarthy.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2644

Short Caption: Michael Bost, et al v. Illinois State Board of Elections, et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Republican National Committee; National Republican Congressional Committee

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Consovoy McCarthy PLLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        None

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None

(4)    Provide information required by FRAP 26.1(b)  Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

---

Attorney's Signature: /s/ Conor D. Woodfin        Date: October 8, 2023

Attorney's Printed Name: Conor D. Woodfin

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: 1600 Wilson Blvd., Ste. 700

        Arlington, VA 22209

Phone Number: (703) 243-9423        Fax Number:

E Mail Address: cam@consovoymccarthy.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES ................................................................................ ii

INTEREST OF AMICI CURIAE ......................................................................... 1

INTRODUCTION ................................................................................................ 2

SUMMARY OF ARGUMENT ............................................................................. 3

ARGUMENT ........................................................................................................ 5

    I.    Candidates suffer electoral harms when votes are counted in violation of federal law. ................................................................... 6

    II.    Candidates suffer financial harms when election laws cause them to spend money. ...................................................................... 9

CONCLUSION .................................................................................................... 14

CERTIFICATE OF COMPLIANCE .................................................................. 15

CERTIFICATE OF SERVICE .......................................................................... 16

# TABLE OF AUTHORITIES

## CASES

*Bognet v. Sec'y Commonwealth of Pa.*,
   980 F.3d 336 (3d Cir. 2020) ...................................................................... 9

*Carney v. Adams*,
   141 S. Ct. 493 (2020). .............................................................................. 11

*Carson v. Simon*,
   978 F.3d 1051 (8th Cir. 2020)............................................................. 6, 7, 8

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ............................................................................ 11, 12

*Crawford v. Marion Cnty. Election Bd.*,
   472 F.3d 949 (7th Cir. 2007).......................................................... 12, 13, 14

*Ex parte Levitt*,
   302 U.S. 633 (1937) .................................................................................. 10

*FEC v. Akins*,
   524 U.S. 11 (1998) .................................................................................... 10

*FEC v. Cruz*,
   142 S. Ct. 1638 (2022) ............................................................................ 9, 12

*Foster v. Love*,
   522 U.S. 67 (1997) ...................................................................................... 6

*Hotze v. Hudspeth*,
   16 F.4th 1121 (5th Cir. 2021) ................................................................... 13

*Krislov v. Rednour*,
   226 F.3d 851 (7th Cir. 2000)................................................................... 4, 9

*Lake v. Hobbs*,
   623 F. Supp. 3d 1015 (D. Ariz. 2022)......................................................... 8

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................... 8, 10

*McLain v. Meier*,
   637 F.2d 1159 (8th Cir. 1980)..................................................................... 6

*Mecinas v. Hobbs,*
   30 F.4th 890 (9th Cir. 2022) .................................................................. 6

*Republican Nat'l Comm. v. Common Cause R.I.,*
   141 S. Ct. 206 (2020) ............................................................................ 7

*Sangmeister,*
   565 F.2d 460 (7th Cir. 1977) ................................................................ 6

*Schlesinger v. Reservists Comm. to Stop the War,*
   418 U.S. 208 (1974) ............................................................................ 11

*Shays v. FEC,*
   414 F.3d 76 (D.C. Cir. 2005) ................................................................ 6

*Sierra Club v. Morton,*
   405 U.S. 727 (1972) ............................................................................ 10

*Susan B. Anthony List v. Driehaus,*
   573 U.S. 149 (2014) .................................................................... 5, 8, 12

*Trump v. Wis. Elections Comm'n,*
   983 F.3d 919 (7th Cir. 2020) ....................................................... passim

*United States v. Students Challenging Regul. Agency Procs. (SCRAP),*
   412 U.S. 669 (1973) ............................................................................ 10

## OTHER AUTHORITIES

*For the People Act of 2019*, H.R. 1,
   116th Cong. §1621(a)(2) ....................................................................... 2

*Freedom to Vote: John R. Lewis Act*, H.R. 5746,
   117th Cong. §1301(a)(1)(B) (2022) ...................................................... 3

*The ACCESS Act*, H.R. 8406,
   116th Cong. §103(a) (2020) ................................................................. 2

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. I, §4 ................................................................................ 2

U.S. Const. art. II, §1 ............................................................................... 2

## INTEREST OF AMICI CURIAE

Amici are political committees who support Republican candidates for federal, state, and local political office. The Republican National Committee (RNC) is a political organization that helps its members achieve electoral victories at the local, state, and national level, and that works to ensure a fair and equal electoral process. The RNC is a national political party that represents over 30 million registered Republicans in all 50 states, the District of Columbia, and the territories. To further its mission, the RNC raises and spends funds to support Republican candidates across the nation, and it engages in a wide range of party-building activities, including voter registration, persuasion, and turnout programs.

The National Republican Congressional Committee (NRCC) is a national political committee that works to elect Republicans to the U.S. House. The NRCC supports Republicans by providing direct financial contributions, technical and political guidance, and by making independent expenditures to advance political campaigns. The NRCC also engages in voter education, registration, and turnout programs, as well as other party-building activities.

Amici have vital interests in protecting the constitutional and statutory rights of Republican voters and Republican candidates. They also have interests in ensuring that States follow election procedures, in particular those set by the U.S. Constitution and federal law.[1]

---

[1] Counsel for all parties have consented to the filing of this amicus curiae brief. *See* Fed. R. App. P. 29(a)(2). No counsel for any party authored this brief in whole or in part, and no entity or person, aside from amicus curiae and their counsel, made any monetary contribution toward the preparation or submission of this brief.

## INTRODUCTION

Every two years, Americans gather to vote on election day. That day marks the transfer of the people's vote into the hands of elected officials. Before that date, votes will be cast. After that date, votes will be counted. And while there might be delays, disputes, and debates after election day, federal law prohibits election officials from counting any votes that come in after that day is over.

Under our Constitution, Congress has the power to "determine the Time" for appointing presidential electors. U.S. Const. art. II, §1. And although the state legislatures have power to set the "Times" for choosing U.S. Senators and Representatives, Congress can "make or alter" that time if it chooses to do so. U.S. Const. art. I, §4. And that's exactly what Congress has done. By establishing a national day for federal elections, Congress set a uniform law that States must follow.

Illinois violates that federal law. Illinois counts mail-in ballots received up to fourteen days after election day, so long as the ballots are postmarked or certified on or before election day. That means that election officials are still receiving votes long after the election is over. Illinois has transformed election *day* into election *weeks*. But since Congress set the deadline, only Congress—not Illinois—can move it.

In fact, Congress has considered changing the election-day deadline for absentee voters many times. In 1977, Congress considered extending ballot receipt deadlines for overseas voters. *See* Appellants' Br. at 37 n.24. More recently, Congress considered expanding the election-day deadline for all absentee voters. *See For the People Act of 2019*, H.R. 1, 116th Cong. §1621(a)(2); *The ACCESS Act*, H.R. 8406, 116th Cong. §103(a) (2020); *Freedom to Vote: John R. Lewis Act*, H.R. 5746, 117th

Cong. §1301(a)(1)(B) (2022). But those bills are not law. Unless Congress expands the "Time" for federal elections to permit absentee ballots after election day, the State can't count those ballots.

For these reasons, Amici agree with Plaintiffs on the merits. They write separately to explain why candidates for public office have standing to challenge state violations of federal election law. State laws governing elections—particularly laws that determine what votes are counted—directly affect candidates in those elections. Candidates must spend time and money organizing their campaigns around the law. And those are just the financial costs. When a State counts ballots that federal law *prohibits* counting, it self-evidently harms the candidates in that race. For these reasons, the district court erred in finding that Plaintiffs lack standing.

## SUMMARY OF ARGUMENT

The district court erred in ruling that Plaintiffs lack standing to challenge Illinois' ballot-receipt deadline. In particular, the court erred in finding that candidates for office do not have standing to challenge laws governing the very elections they participate in. The court overlooked Seventh Circuit precedent, misunderstood Plaintiffs' claims, and misapplied fundamental principles of standing.

First, candidates suffer injury when votes are counted in violation of law. *Trump v. Wis. Elections Comm'n*, 983 F.3d 919, 924 (7th Cir. 2020). Candidates experience the effects of voting more directly than anyone—they either win or lose. Given those stakes, candidates have a clear interest in ensuring that only legitimate votes are counted. That interest isn't merely an interest in winning. It's an interest in a fair process that follows the rule of law—anything less casts doubt on the victor,

sows discontent in the voting populace, and breeds distrust in the system. Plaintiffs allege that Illinois is counting votes received after election day in violation of federal law. Illinois thus subjects candidates to an electoral system that counts votes that should not be counted. And the counting of illegitimate ballots—whether those ballots cause a candidate to lose or not—imposes an Article III injury on the candidate.

Second, candidates suffer injury when they are forced to spend money as a result of a State's election law. *Krislov v. Rednour*, 226 F.3d 851, 857 (7th Cir. 2000). All candidates spend time and money campaigning, complying with election rules, and turning out voters. To establish standing, all that a candidate needs to allege is that he or she spends money as a result of the challenged law—and if that law is enjoined, the candidates could use that money for other things. Plaintiffs meet those requirements here. When Illinois permits ballots to come in two weeks after election day, candidates must rewrite their absentee ballot strategy. They must maintain get-out-the-vote programs for mail-in ballots *through* election day, rather than terminating them days before. That shifts candidates' resources and attention from the polls to the mailbox at the most critical moment in the election. Moreover, allowing voters extra days to mail ballots will likely result in a higher volume of mail-in ballots received, which increases candidates' expenditures for chasing voters to cure any ballot defects. And because ballots could be coming in up to fourteen days after an election, candidates must continue to spend money on poll-watchers and election challengers long after election day has come and gone. All of these are

concrete injuries to a candidate's pocketbook traceable to the ballot-receipt deadline. The district court erred when it denied that Plaintiffs suffered financial injury.

For these reasons, the judgment of the district court should be reversed.

## ARGUMENT

When it comes to elections, candidates running for office have the most at stake. They spend countless hours and millions of dollars organizing and running campaigns. They must comply with federal, state, and local laws, plus the rulebook of the Federal Election Commission and its many state counterparts. They must submit filings, meet deadlines, and develop a winning strategy. And when the dust clears, those candidates either win or lose—the zero-sum game of elections permits no halfway victories.

Given these stakes, candidates rely on Congress, the States, and elections officials to set clear rules of road—and follow them. When those rules are violated, candidates suffer. They lose money, time, and possibly the election. They must reevaluate their strategy, reorganize their campaign, and rework their messaging, all on a compressed timeline. Those harms are magnified when the *State* is the one violating federal election law. When the State breaks the rules, candidates' only recourse to mitigate their financial and political harms is to seek relief in federal court. That's what Plaintiffs did here. But the district court ruled that not only did Plaintiffs not have a claim—it said they won't even suffer an injury. That was error.

"An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (cleaned up). There can be no doubt that

candidates for office suffer various harms when a State's election rules violate the federal law establishing a national election day. The Supreme Court expressed no doubt that candidates had standing when it held that Louisiana's open-primary statute violated the federal law establishing a national election day. *Foster v. Love*, 522 U.S. 67 (1997). Indeed, courts regularly hear challenges to state and federal election rules brought by political candidates.[2] This case is no different from *Foster*: candidates for federal office challenge a state law that violates the federal day for elections under 2 U.S.C. §§1 and 7. Illinois's statute causes both electoral and financial harms.

## I.    Candidates suffer electoral harms when votes are counted in violation of federal law.

This Court has held that "[a]n inaccurate vote tally is a concrete and particularized injury to candidates." *Trump*, 983 F.3d at 924 (quoting *Carson v. Simon*, 978 F.3d 1051, 1058 (8th Cir. 2020)). The district court ignored that principle. It didn't even cite *Trump v. Wisconsin Elections Commission*. But that case is binding, and it requires a finding that Plaintiffs have standing in this case. The State's current system will result in a "final vote tally" that does not "accurately reflect[] the legally

---

[2] *E.g.*, *Mecinas v. Hobbs*, 30 F.4th 890, 899 (9th Cir. 2022) (reasserting the "Court's long-held position that the 'potential loss of an election' may give rise to standing"); *Shays v. FEC*, 414 F.3d 76, 85 (D.C. Cir. 2005) ("Shays and Meehan, as regular candidates for reelection, suffer injury to a statutorily protected interest if under FEC rules they must compete for office in contests tainted by [unlawful] practices."); *McLain v. Meier*, 637 F.2d 1159 (8th Cir. 1980) (candidate challenge to North Dakota ballot-order statute); *Sangmeister v. Woodard*, 565 F.2d 460, 463 (7th Cir. 1977) (same).

valid votes cast." *Carson*, 978 F.3d at 1058. That inaccurate tally is itself a harm to candidates. *See Trump*, 983 F.3d at 924.

The district court misunderstood Plaintiffs' injuries. The court attempted to distinguish *Carson v. Simon* on the ground that "*Carson*'s electors were concerned that ballots cast in direct conflict with state law would be counted as legitimate votes." Op. at 20. But that's precisely what will happen here—Illinois will count ballots received after election day "in direct conflict" with federal law. That justified the candidates' standing in *Carson*, it justified the candidates' standing in *Trump*, and it justifies the candidates' standing here. In attempting to distinguish *Carson*, the district court inadvertently articulated the very reason Plaintiffs have standing in this case.

Trying to distance itself from *Carson*, the court reasoned that there is a difference between challenging a "consent decree that contradicted state law" and challenging a "statute passed by the state legislature and signed into law by the governor." Op. at 20. But that distinction has nothing to do with whether candidates *suffer harm* as a result of illegally counted votes. *Carson*, 978 F.3d at 1058 n.1 ("The Electors here have standing *independently* as elector candidates. Their standing is not based on Minnesota's ability, or lack of ability, to 'enforce its duly enacted laws.'" (emphasis added) (quoting *Republican Nat'l Comm. v. Common Cause R.I.*, 141 S. Ct. 206 (2020))).

The district court couldn't explain why the source of the harm—a consent decree versus a state law—matters to determining *whether* candidates are injured.

Sensibly, the Seventh Circuit did not draw that distinction when it applied *Carson* to find that President Trump had standing as a candidate to challenge state election procedures under federal law. *Trump*, 983 F.3d at 924. If it mattered that *Carson* concerned a consent decree, this Court would have said so in *Trump v. Wisconsin Elections Commission*. It didn't say that, because the harms produced by "the allegedly unlawful manner" of a State's election procedures are no less "concrete and particularized" because they are caused by state law instead of a consent decree. *Id.*

Because Illinois law requires officials to count ballots that come in after election day, there can be no doubt that these injuries are "certainly impending." *Susan B. Anthony List*, 573 U.S. at 158. The district court did not question—and no one disputes—the certainty that ballots will come in after election day. Federal law prohibits those ballots from being counted. Illinois law, which requires those ballots to be counted, "necessarily departs" from federal law. *Carson*, 978 F.3d at 1058. And when those ballots are counted in violation of federal law, a "candidate for elected office" suffers an injury "that affects him in a personal and individual way." *Trump*, 983 F.3d at 924 (cleaned up) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Some courts have found that candidates lacked standing to challenge certain voting technology, but they did so because of "speculative allegations that voting machines may be hackable." *Lake v. Hobbs*, 623 F. Supp. 3d 1015, 1029 (D. Ariz. 2022) (collecting cases). The courts doubted the *likelihood* that the electoral injury would occur, but they did not doubt that candidates are legitimately injured when ballots are miscounted. Here, no one contests the likelihood that ballots will be received after

election day and counted. And because "[f]or standing purposes" the court must "accept as valid the merits of [plaintiffs'] legal claims," counting those ballots will necessarily violate federal law. *FEC v. Cruz*, 142 S. Ct. 1638, 1647 (2022). That "inaccurate vote tally is a concrete and particularized injury to candidates." *Trump*, 983 F.3d at 924 (citation omitted).

## II. Candidates suffer financial harms when election laws cause them to spend money.

The Plaintiff candidates also suffer independent financial harms as a result of Illinois counting ballots received after the federal deadline. A two-week extension on absentee ballots means that the candidates must spend time and money on poll-watchers for an additional two weeks. *See* Dkt. 31-4, ¶¶5, 17. They must reallocate resources and shift their strategy to address the effective two-week extension to receive mail ballots. A different ballot deadline changes voter behavior, which necessarily affects campaign strategy and expenditures. When candidates are "required to allocate additional campaign resources" as a result of a challenged law, they suffer an Article III injury. *Krislov*, 226 F.3d at 857. In rejecting Plaintiffs' financial injuries, the district court made two errors.

*First*, the district court misunderstood what it means for an injury to be particularized. The court ruled that Plaintiffs' financial injuries are "not particularized because all federal candidates in Illinois are affected by the Statute in the same way." Op. at 18. The Third Circuit made the same mistake in a now-vacated decision. *See Bognet v. Sec'y Commonwealth of Pa.*, 980 F.3d 336, 351 (3d Cir. 2020), *cert. granted, judgment vacated sub nom. Bognet v. Degraffenreid*, 141 S. Ct. 2508

(2021). But Article III does not require *unique* injuries—only concrete and "particularized" injuries, which are injuries that "affect[] the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. "[W]here a harm is concrete, though widely shared, the Court has found 'injury in fact.'" *FEC v. Akins*, 524 U.S. 11, 24 (1998). By contrast, an injury is a "generalized grievance" if the plaintiff is "claiming only harm to his *and every citizen's interest* in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does *the public at large*." *Lujan*, 504 U.S. at 573-74 (emphasis added).

In other words, "standing is not to be denied simply because many people suffer the same injury." *United States v. Students Challenging Regul. Agency Procs. (SCRAP)*, 412 U.S. 669, 687 (1973); *see also Sierra Club v. Morton*, 405 U.S. 727, 734 (1972) ("[T]he fact that particular environmental interests are shared by the many rather than the few does not make them less deserving of legal protection through the judicial process."). In *FEC v. Atkins*, for example, Supreme Court found that voters had standing to challenge an FEC determination that denied the voters access to information about a particular political organization. *Akins*, 524 U.S. at 24. The Court held that "the informational injury" was "sufficiently concrete and specific such that the fact that it is widely shared does not deprive Congress of constitutional power to authorize its vindication in the federal courts." *Id.* at 24-25. Likewise, the standing of *candidates*—a much smaller, more identifiable group than voters—is not defeated merely because other candidates might share the injury, as those injuries are not "common to all members of the public." *Ex parte Levitt*, 302 U.S. 633, 634 (1937) (per

curiam). Plaintiffs' electoral and financial harms may be injuries suffered by a small number of other candidates, but they are not injuries "all citizens share." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 217 (1974).

Recent Supreme Court precedent confirms these longstanding principles. In *Carney v. Adams*, the Supreme Court held that a Delaware citizen did not have standing to challenge Delaware's major-party requirement for judicial office. 141 S. Ct. 493, 499 (2020). The plaintiff suffered no injury differentiated from "all citizens of Delaware." *Id.* To show a particularized injury, the plaintiff "must at least show that he is likely to apply to become a judge in the reasonably foreseeable future if Delaware did not bar him because of political affiliation," which means he must show that "he is 'able and ready' to apply" for judicial office. *Id.* at 499-500. In other words, he must become a "candidate for elected office," who suffers a particularized injury because the challenged election laws "affect[] him in a personal and individual way." *Trump*, 983 F.3d at 924 (cleaned up). Plaintiffs have shown as much here.

*Second*, the district court erred in ruling that Plaintiffs' financial injuries were speculative. The court said that Plaintiffs' financial expenses were mere attempts to "manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending." Op. at 19 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013)). But campaign expenditures incurred because of election regulations are hardly attempts to "manufacture standing." The district court relied on *Clapper*, in which plaintiffs spent money to avoid being subjected to the risk of government surveillance. *See Clapper*, 568 U.S. at 401. In that case, the

Supreme Court held that the risk of being subjected to the surveillance was speculative, and the plaintiffs' voluntary expenses to avoid that speculative risk were not an Article III injury. *Id.* at 402. But unlike *Clapper*, this case is not about "threatened enforcement" proceedings, *Cruz*, 142 S. Ct. at 1647 (discussing *Clapper*), or preenforcement review of "arrest, prosecution, or other enforcement action," *Susan B. Anthony List*, 573 U.S. at 158. Rather, this case concerns election regulations that compel candidates "to devote resources" to extended election activities and accomplishing their goals. *Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007), *aff'd*, 553 U.S. 181 (2008). This case is about state law that is being applied *right now*, not laws for which there is merely a "risk" of enforcement sometime in the future.

Plaintiffs must spend money *today* because of the State's present-day law requiring that officials count ballots received after election day. Plaintiffs, for example, must spend time and money on additional poll-watchers. *See* Dkt. 31-4, ¶¶5, 17. That expense has nothing to do with whether "more ballots will be cast for [their] opponents." Op. at 19. Election challenges are common, and in close races minor details caught by poll-watchers could decide the election. That disproves the district court's theory that the candidates' "electoral fate is sealed at midnight on Election Day," since ballots will continue to be counted—and *received*—weeks after election day has come and gone. Op. at 19. Plaintiffs must also spend more time and money encouraging voters to mail their absentee ballots through election day, track their ballots, and potentially cure any defects in the following weeks. Those expenses are

not "after the fact." Op. at 19. And even if those voters are few in number, "[t]he fact that the added cost … may be slight does not affect standing, which requires only a minimal showing of injury." *Crawford*, 472 F.3d at 951.

In short, "[t]he candidate's injury-in-fact should be self-evident. Candidates for office spend money, devote time, and otherwise injuriously rely on provisions of the Election Code in organizing, funding, and running their campaigns." *Hotze v. Hudspeth*, 16 F.4th 1121, 1125 (5th Cir. 2021) (Oldham, J., dissenting); *cf. id.* at 1125 (maj. op.) (holding that candidates lacked standing because they had not "claimed that they [were] otherwise up for election"). Courts regularly find that candidates have standing to challenge the rules that govern elections. *See supra* note 1. Plaintiffs have alleged many different economic burdens caused by Illinois counting late ballots. They thus have standing to challenge the law.

\*       \*       \*

Finally, Plaintiffs' electoral and financial injuries are fairly traceable to Defendants' actions and redressable by the district court. Plaintiffs' injuries are "'fairly traceable' to the challenged action of the defendants" because Defendants play at least "some role in administering the election," a fact no one disputes. *Trump*, 983 F.3d at 924 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). The injuries are also redressable, since the district court can remedy the harm of illegally counted votes by declaring that Illinois's absentee-ballot deadlines violate federal law, and enjoining the State from counting ballots received after election day. *See id.* ("Were we to grant the President the relief he requests and declare the election results void, the alleged

injury—the unlawful appointment of electors—would be redressed."). If the Court determines the plaintiffs have standing as candidates, it need not address their other theories. *See Crawford*, 472 F.3d at 951.

## CONCLUSION

The Court should reverse the district court's ruling that the candidates lack standing to challenge the State's violation of federal election law.

Dated: October 10, 2023

Respectfully submitted,

 */s/ Thomas R. McCarthy*

Tyler R. Green
CONSOVOY MCCARTHY PLLC
222 S. Main St., 5th Floor
Salt Lake City, UT 84101
Tel: (703) 243-9423
tyler@consovoymccarthy.com

Thomas R. McCarthy
Cameron T. Norris
Conor D. Woodfin*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
Tel: (703) 243-9423
tom@consovoymccarthy.com
cam@consovoymccarthy.com
conor@consovoymccarthy.com

*Application for admission pending

Counsel for *Amici Curiae*

14

**CERTIFICATE OF COMPLIANCE**

This brief complies with Rule 29(a)(5) and Cir. R. 29 because it contains 3,842 words, excluding the parts that can be excluded. This brief also complies with Rule 32(a)(5)-(6) and Cir. R. 32 because it has been prepared in 12-point Century Schoolbook font. This brief has been scanned for viruses and is virus-free.

Dated: October 10, 2023                     */s/ Thomas R. McCarthy*

                                                              Counsel for *Amici Curiae*

### CERTIFICATE OF SERVICE

I filed a true and correct copy of this brief with the Clerk of this Court via the CM/ECF system, which will notify all counsel.

Dated: October 10, 2023                       */s/ Thomas R. McCarthy*

                                             Counsel for *Amici Curiae*