No. 23-2644

———————————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

———————————————

MICHAEL J. BOST, et al.,
Plaintiff-Appellants,

v.

ILLINOIS STATE BOARD OF ELECTIONS, et al.,
Defendant-Appellees.

———————————————

On Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
Case No. 1:22-cv-02754
The Honorable Judge John F. Kness

———————————————

**AMICUS CURIAE BRIEF OF RESTORING INTEGRITY AND
TRUST IN ELECTIONS SUPPORTING APPELLANTS**

———————————————

Drew C. Ensign
202 E. Earll Drive
Suite 490
Phoenix, Arizona 85004
Telephone: (602) 492-5969
Fax: (406) 447-2204
drewensignlaw@gmail.com

*Counsel for Amicus Curiae RITE*

Dated: October 10, 2023

Save As    Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-2644

Short Caption: Bost et al. v. Illinois State Board of Elections et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Restoring Integrity and Trust in Elections

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Drew C. Ensign PLLC

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

n/a

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

n/a

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

n/a

Attorney's Signature: s/ Drew C. Ensign      Date: 10/10/23

Attorney's Printed Name: Drew C. Ensign

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☑  **No** ☐

Address: 202 E. Earll Drive, Suite 490

Phoenix, AZ 85004

Phone Number: (602) 492-5969      Fax Number: (406) 447-2204

E-Mail Address: drewensignlaw@gmail.com

rev. 12/19 AK

# TABLE OF CONTENTS

INTEREST OF AMICUS CURIAE ........................................................... 1

INTRODUCTION ................................................................................ 2

ARGUMENT ...................................................................................... 6

    I.    Illinois's Post-Election Receipt Deadline Violates The
        Supreme Court's Decision in *Foster v. Love* ........................... 6

    II.   The District Court Improperly Relied Upon
        Congressional Inaction ...................................................... 11

    III.  The District Court Erroneously Applied the
        Presumption Against Preemption........................................ 13

    IV.  The District Court's Construction Invites Significant
        Mischief .......................................................................... 16

    CONCLUSION ......................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Arizona Democratic Party v. Hobbs*, 18 F.4th 1179 (9th Cir. 2021) ...... 19

*Arizona v. Inter Tribal Council of Arizona, Inc.*,
   570 U.S. 1 (2013) ........................................................................ 14, 15, 16

*Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021) ........................................ 7

*Bognet v. Secretary Commonwealth of Pennsylvania*,
   980 F.3d 336 (3d Cir. 2020)........................................... 7, 10, 18

*Bostock v. Clayton County*, 140 S. Ct. 1731 (2020)................................. 12

*Brown v. Gardner*, 513 U.S. 115 (1994). ................................................. 11

*Foster v. Love*, 522 U.S. 67 (1997) ......................................... 2, 3, 4, 7, 14

*INS v. Cardoza–Fonseca*, 480 U.S. 421 (1987) ...................................... 13

*League of Women Voters of Indiana, Inc. v. Sullivan*,
   5 F.4th 714 (7th Cir. 2021) ................................................... 15

*Pa. Democratic Party v. Boockvar*, 238 A.3d 345  (2020) ....................... 18

*Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633 (1990)............... 12

*United States v. Craft*, 535 U.S. 274 (2002) .......................................... 12

*Voting Integrity Project, Inc. v. Keisling*,
   259 F.3d 1169 (9th Cir. 2001) ............................................... 3, 7, 12, 13

**STATUTES**

2 U.S.C. § 1 ........................................................................... 3, 6, 12, 19

2 U.S.C. § 7 ........................................................................... 3, 6, 12, 19

3 U.S.C. § 1 ........................................................................... 3, 6, 12, 19

3 U.S.C. § 5 ......................................................................................... 20

3 U.S.C. § 7 ......................................................................................... 20

A.R.S. § 16-548(A) ............................................................................. 20

## OTHER AUTHORITIES

Cohen, Ethan, *Recount confirms Democrat Kris Mayes won Arizona attorney general race*, CNN (Dec. 29, 2022),........................................ 20

Cong. Globe, 42 Cong., 2d Sess. 676 (1872) ..................................... 12, 13

Sanchez, Yvonne Wingett, *Arizona recount law could delay certifying 2024 election, officials say*, Washington Post (Oct. 5, 2023).............. 20

Sievers, Caitlin, *Kris Mayes comes out ahead of Abe Hamadeh, recount triggered*, Arizona Mirror (Nov. 21, 2022) .......................................... 19

## CONSTITUTIONAL PROVISIONS

Article I, § 4, cl. 1............................................................. 3, 14, 15

Article I, § 5 cl.1................................................................. 17

Article II § 1 cl. 4 ................................................................. 3

**INTEREST OF AMICUS CURIAE**

Restoring Integrity and Trust in Elections ("RITE") is a 501(c)(4) non-profit organization with the mission of protecting the rule of law in elections in the United States. RITE is a non-partisan, public-interest organization dedicated to protecting elections as the democratic voice of the people.

As part of that mission, RITE seeks to defend the electoral process from practices that risk sowing distrust in outcomes, such as the challenged provisions of Illinois law here, 10 Ill. Comp. Stat. Ann. §§ 5/18A-15(a), 5/19-8(c), which mandate the counting of absentee ballots that arrive up to 14 days *after* election day, as long as they are post-marked on or before election day.

 RITE respectfully submits this brief as Amicus Curiae in support of the Plaintiffs' challenge to those provisions.[1]

---

[1] Pursuant to Rule 29(a)(4)(E), counsel for RITE certifies that no party's counsel authored this brief in whole or in part, and no party, party's counsel, or person other than *amicus curiae* RITE contributed money to fund the brief's preparation or submission. Counsel for all parties consented to the filing of this brief.

## SUMMARY OF THE ARGUMENT

This case presents what should be a simple question: can a vote cast *after* election day count under federal law? The answer is clear under both common sense and controlling Supreme Court precedent, *Foster v. Love*, 522 U.S. 67 (1997): No. Because the district court both ignored *Foster* and supplied the wrong answer to that straightforward question, its judgment should be reversed.

It is undisputed that a vote submitted by absentee ballot in Illinois is *not* valid unless received by election officials. Absent that receipt, the vote is not actually voted even if *all* other requirements (*e.g.*, signing the ballot affidavit, marking the ballot, and selecting only one candidate for each federal office) are satisfied. A fully completed absentee ballot sitting on a kitchen table is not a vote because it has not been received. Thus, the actual receipt of the ballot is necessarily one of "the final act[s] of selection," if not the final act, necessary for a vote to be legally cast. *Id.* at 72. This case presents a fundamental conflict between federal and state law as to whether this "final act" of voting (*i.e.*, ballot receipt) can take place *after* election day.

Congress has long ago exercised its authority under the Election Clause (Art. I, § 4, cl. 1) and Article II (§ 1 cl. 4) to set a single "election day" for all federal offices in the United States (hereinafter, "Election Day"). As every schoolchild learns, "the day for the election" in the U.S. is the "Tuesday next after the 1st Monday in November." 2 U.S.C. § 7 (U.S. House); *accord* 2 U.S.C. § 1 (Senate); 3 U.S.C. § 1 (Presidential election) (collectively, "Election Day Statutes").

The Supreme Court has already definitively construed what these statutes mean: all the "combined actions of voters and officials *meant to make a final selection* of an officeholder" must occur by the close of that day. *Foster*, 522 U.S. at 72 (emphasis added); *accord Voting Integrity Project, Inc. v. Keisling*, 259 F.3d 1169, 1175 (9th Cir. 2001) (The Supreme Court in Foster held "that the word 'election' means a 'consummation' of the process of selecting an official."). That means that by the end of "election day" all of the steps necessary for the selection of the official are complete. All that remains thereafter is administrative: the counting, the canvassing, and the certifying. But the *combined* actions of voters and officials necessary to cast votes are over. The die is

cast. The ballot box is closed. All that remains is to ascertain which candidates had been selected as of Election Day.

Under the federal Election Day Statues and *Foster*, receipt of absentee ballots therefore must occur before the end of election day. But Illinois law expressly violates this constraint, permitting ballots that are received up to 14 days *after* election day to be counted, as long as they are postmarked by election day (hereinafter, the "Post-Election Receipt Deadline").

The fundamental problem is that, because a vote for federal offices *cannot* be validly cast until the "final act" to vote a ballot occurs, the Post-Election Receipt Deadline blesses voting after the end of federally mandated Election Day. *See Foster*, 522 U.S. at 72. A ballot cannot become a valid vote until *received* and, when that receipt occurs after Election Day, it is invalid under federal law.

 It should go without question that the Election Day Statutes prohibit Illinois from leaving its polling locations open for two weeks after Election Day to permit voters to vote so long as they can establish through some form of state-determined proof, whether documentary or testimonial, that they had made up their minds before the close of

Election Day. Such ballots would immediately be recognized as impermissible post-Election-Day votes under *Foster*. It would not matter, for this analysis, if such voters could show that they had written their choices down before the close of Election Day, even if they had written those choices down on an absentee ballot that had been mailed to them and made all the required attestations.

What Illinois has allowed here is the functional equivalent. All that is different is that, under Illinois rule, the voter need not even show up alongside their ballot. Instead, ballots that physically show up without their voter after Election Day count, so long as they arrive with what the state deems to be sufficient documentary proof of pre-Election Day conduct. But whether the voter accompanies the ballot or not should not matter to the analysis. Whenever an electoral choice physically arrives *after* Election Day—with or without the voter in tow—that is post-Election-Day voting under *Foster*.

The district court's errors extend well beyond its abject failure to consider *Foster*, however. In particular, the district court (1) wrongly relied on Congressional inaction as endorsing the Post-Election Receipt Deadline and (2) erroneously applied a presumption against preemption

that unequivocally does not apply to statutes enacted under Congress's Election Clause authority. In addition, the district court's reasoning would enable significant mischief that is readily avoidable by simply following binding Supreme Court authority.

The district court's determination that Illinois's Post-Election Receipt Deadline comports with the Federal Election Day Statutes should be reversed.

## ARGUMENT

### I. Illinois's Post-Election Receipt Deadline Violates The Supreme Court's Decision in *Foster v. Love*

Contrary to the district court's reasoning, this case is *not* one of first impression. Instead, the Supreme Court has definitively construed 2 U.S.C. §§ 1, 7 and 3 U.S.C. § 1 in *Foster*, and did so in a manner wholly incompatible with the district court's reasoning. But although the district court fleetingly cited *Foster* in addressing *standing*, A.23, it remarkably ignored that decision *entirely* when addressing the merits of Plaintiffs' challenge under the federal Election Day Statutes—even though it is Supreme Court authority definitively construing those precise statutes. *See* A.34-37.

It gets worse: rather than addressing the Supreme Court's pronouncement in *Foster*, it instead relied heavily on *Bognet v. Secretary Commonwealth of Pennsylvania*, 980 F.3d 336, 349 (3d Cir. 2020)—and ignored that the Supreme Court vacated that decision. *See Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021) (granting certiorari and vacating Third Circuit judgment as moot). The district court thus (1) ignored the Supreme Court's definitive construction of the Election Day Statutes in *Foster*, even though it was plainly aware of that decision, and (2) instead relied entirely on putatively contrary authority that the Supreme Court vacated, without mentioning the subsequent history annihilating any precedential weight. Defiance of Supreme Court authority rarely comes so blatant.

*Foster* makes this a simple case: it makes clear what must occur under federal law by the end of federal Election Day: the completion of the "combined actions of voters and officials *meant to make a final selection* of an officeholder." 522 U.S. at 72 (emphasis added). *Accord id.* at 75 (Election Day is when "the final act of selection" must take place); *Keisling*, 259 F.3d at 1175 (The Supreme Court in *Foster* held "that the

word 'election' means a 'consummation' of the process of selecting an official").

Under Illinois law, however, the necessary completion of the "combined actions … to make a final selection" of a candidate is not required to occur until an absentee ballot is received up to two weeks after Election Day. A.14-15. Official ballot receipt is certainly an official action required to make that selection. In other words, it is clearly among the "combined acts" that is part of the selection process. At the polling place, a voter typically marks her ballot, inserts it into the tabulator, and waits for the tabulator to accept the ballot before she has completed her vote. If instead she marks her ballot, and walks out of the polling station without inserting it into the tabulator, only to return with the unadulterated ballot after the close of the election—she has not completed a vote.

Same with the mail. If, for example, the ballot is lost, stolen, irreparably damaged through the mail, or just arrives late for whatever reason—even through no fault of the voter—a ballot has been marked, but a vote has not been cast. This is all true even under the Illinois statute at issue in this case. Official receipt of the ballot is thus perhaps

the *critical* official act that makes up the "combined actions … to make a final selection" that define the Election Day under the relevant precedent. Until it occurs, there is no vote because the process of selecting an official has not been consummated. And under the Election Day Statutes, which control over contrary state law, consummation of the process, including ballot receipt, must occur before the end of Election Day. State laws like the one at issue here that seek to extend the date of consummation are, accordingly, unlawful and without effect.

Receipt of ballots is thus of a different type than those official actions that may permissibly take place after Election Day, like tabulation and certification—which are not part of making a selection of a candidate, but rather the ministerial acts of ascertaining what selections that voters have made. Unlike receipt, tabulation and certification are merely steps that identify those who have been, as of Election Day, selected by the electorate.

The district court made no effort to reconcile its merits reasoning with *Foster*. *See* A.34-37. Because what could it have said? Federal law under *Foster* mandates that all necessary "combined actions … to make a final selection" must occur by Election Day while Illinois's Post-Election

Receipt Deadline permits ballot receipt to take place 14 days later. It would have had to have said that some votes—*i.e.*, in-person votes—must be received by Election Day. But other votes—*i.e.*, mail-in votes—need not abide by that deadline. There is no carveout for mail-in votes in the relevant statutes, however. The district court could not have squared that circle had it attempted to do so. Which is probably why it did not even try.

Ignoring *Foster*, the district court placed significant reliance on the Third Circuit's vacated decision in *Bognet*. *See* A.35 (twice citing *Bognet*, 980 F.3d at 353). Even pre-vacatur that was error for three reasons. *First*, *Bognet* dismissed an action for lack of standing rather than reaching the merits. 980 F.3d at 347-63. *Second*, the portion twice cited by the district court (page 353) addressed a "claim that Defendants' … Deadline Extension violate[d] the Equal Protection Clause"—not the Federal Election Day Statutes. *Id. Third*, that portion of *Bognet* did not address *Foster* at all, and the Third Circuit did not address *Foster*'s "combined actions … to make a final selection" or "final act of selection" holdings *anywhere* in its opinion. 980 F.3d at 336-365.

The district court's reliance on *Bognet* was thus misplaced even if that opinion were still good law. But it manifestly is not, since the Supreme Court vacated it without noted dissent. The district court, however, was either unaware of that development or failed to note it.

Because *Foster* construes the Election Day Statutes in a manner that squarely precludes Illinois's Post-Election Receipt Deadline, this Court should reverse the district court's dismissal of Plaintiffs' claims under those statutes.

## II.   The District Court Improperly Relied Upon Congressional Inaction

That court placed significant weight on Congressional *in*action, reasoning that "[d]espite these ballot receipt deadline statutes being in place for many years in many states, Congress has never stepped in and altered the rules." A.25. This too was error.

It is blackletter law that "[c]ongressional silence lacks persuasive significance." *Brown v. Gardner*, 513 U.S. 115, 121 (1994). Indeed, the Court has repeatedly stressed that reliance on inaction is typically not only irrelevant but outright dangerous: "[S]peculation about why a later Congress declined to adopt new legislation offers a *'particularly dangerous'* basis on which to rest an interpretation of an existing law a

11

different and earlier Congress did adopt." *Bostock v. Clayton County*, 140 S. Ct. 1731, 1747 (2020) (quoting *Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990) (emphasis added)); *accord United States v. Craft*, 535 U.S. 274, 287 (2002) ("[F]ailed legislative proposals are 'a *particularly dangerous ground* on which to rest an interpretation of a prior statute.'" (citation omitted) (emphasis added)).

But even if subsequent Congressional inaction could give insight into the meaning of 2 U.S.C. §§ 1, 7 and 3 U.S.C. § 1, the district court's analysis was still erroneous because it ignores the most significant inaction of all: Congress's specific rejection of an amendment that would have permitted voting past Election Day.

Specifically, Congress previously considered *and rejected* an amendment to 2 U.S.C. § 7 that would have allowed states to continue voting after Election Day. *See Keisling*, 259 F.3d at 1173 (quoting Cong. Globe, 42 Cong., 2d Sess. 676 (1872)). At the time, Texas held open its polls for four days, beginning on election day, and Congress considered an amendment that would have permitted that practice. Under the proposed amendment, the national election day would be defined as the "first day of the polls being open in those states." *Id.* (citing Cong. Globe,

42 Cong., 2d Sess. 610 (1872)). That approach would also have permitted Illinois's Post-Election Receipt Deadline by permitting the "election" to extend past the formal election day.

But Congress specifically rejected that amendment. *Id.* at 1174. "Instead, it allowed multi-day voting to continue through the election of 1872, *but not thereafter.*" *Id.* (emphasis added).

"Few principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language." *Id.* (quoting *INS v. Cardoza–Fonseca*, 480 U.S. 421, 442-43 (1987)). The district court ignored these principles entirely, however.

## III. The District Court Erroneously Applied the Presumption Against Preemption

The district court also erred by effectively applying the presumption against preemption that applies in other contexts—but not for Election Clause statutes. The district court analyzed the Illinois Post-Election Deadline to see if it was "*facially compatible* with the relevant federal statutes." A.36 (emphasis added); *accord* A.37 (upholding Illinois "Statute [because it] does not *facially conflict* with the federal election law" (emphasis added)). The district court thus presumed the Illinois

statute was not preempted unless there was a *facial* conflict with federal law.

That was error. Preemption operates differently for Election Clause statutes. "There is good reason for treating Elections Clause legislation differently: The assumption that Congress is reluctant to pre-empt does not hold when Congress acts under that constitutional provision, which empowers Congress to 'make or alter' state election." *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 14 (2013) (quoting Art. I, § 4, cl. 1). Thus, "[w]hen Congress legislates with respect to the 'Times, Places and Manner' of holding congressional elections, it *necessarily* displaces some element of a pre-existing legal regime erected by the States." *Id.* "Because the power the Elections Clause confers is none other than the power to pre-empt, the reasonable assumption is that the statutory text accurately communicates the scope of Congress's pre-emptive intent." *Id.* The presumption against preemption thus "does not hold" in this context, the applicable question is what "the fairest reading of the statute" is, *id.* at 14-15—not whether the state statute *facially conflicts* with federal law.

This Court has similarly recognized this critical distinction between preemption in the Election Clause context and other contexts: "In cases involving a clash between a federal law that addresses a traditional area of state regulation and a competing state law, the Supreme Court presumes no preemption unless there is evidence of a 'clear and manifest purpose' by Congress to do so." *League of Women Voters of Indiana, Inc. v. Sullivan*, 5 F.4th 714, 723 (7th Cir. 2021) (citation omitted). "But voting cases are different: no such presumption applies to preemption cases involving the NVRA. That is because Congress's authority for the NVRA is rooted in the Constitution itself, whose Elections Clause expressly 'empowers Congress to 'make or alter' state election regulations.'" *Id.* (citing *Inter Tribal Council*, 570 U.S. at 14 and quoting U.S. Const. art. I, § 4, cl. 1).

The outcome in *Inter Tribal Council* readily bears this distinction out. The Supreme Court readily conceded that the challenged Arizona statute *could* potentially be harmonized with federal law, admitting that "the mandate that a State 'accept and use' the Federal Form is *fairly susceptible of two interpretations*," *Inter Tribal Council*, 570 U.S. at 9-10 (emphasis added)—with the state law being valid under one of those two

plausible constructions. Under the district court's facial-conflict standard, the Supreme Court should have upheld the Arizona statute. It did not. Instead, the Arizona statute was preempted because "the *fairest reading of the statute* is that [the] state-imposed [requirement] … [wa]s 'inconsistent with'"" federal law. *Id.* at 15 (emphasis added) (citation omitted).

Thus, instead of asking whether the Illinois Post-Election Receipt Deadline facially conflict with federal Election Day statutes, the district court should have examined whether the "fairest reading" of those statutes was "inconsistent with" Illinois's Post-Election Receipt Deadline. As explained above, *Foster* makes that inconsistency obvious.

## IV. The District Court's Construction Invites Significant Mischief

The district court's construction of the federal Election Day Statutes also opens a veritable Pandora's Box that has little to recommend it as a policy matter even if it were legally defensible (and it is not, as explained above and by Plaintiffs). Indeed, the district court's reasoning has no obvious logical end point.

Although Illinois currently requires a postmark that is on election day or earlier, the district court's construction does not require any such limitation to comport with the federal Election Day Statutes.

Indeed, if receipt is not among the "combined actions" that finalize the election as of Election Day, are States free to accept ballots that under their own idiosyncratic evidentiary rules they determine to have been marked before Election Day all the way up to the date by which federal elections must be certified? The date by which federal candidates are sworn in? Some other, later date? Under the district court's ruling, as States press further and further beyond election day, the likely result is that resolutions of federal elections will more frequently depend upon the federal constitutional backstops such as that in Article I, § 5 cl.1. That is, each House of Congress will be more frequently called upon to resolve questions about their own membership. It is implausible to think that Congress in proscribing a firm Election Day left open these questions and courted these destabilizing results. And it has not.

Other States have already tried to push past even the postmark limiting principle. For example, the Pennsylvania Supreme Court mandated that some ballots received *after* election day without any

postmark "be presumed to be timely unless 'a preponderance of the evidence demonstrates that it was mailed after Election Day.'" *Bognet*, 980 F.3d at 345 (quoting *Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 386-87 (2020)). After all, if receipt before Election Day is optional under federal Election Day Statutes, why isn't a postmark just as optional? The Election Day Statutes themselves provide no basis for selecting some forms of evidence over others. And that is not surprising, since nothing in the statutes indicates any intention to open up those types of evidentiary questions. Instead, they draw a bright line at receipt, the last action required to consummate the selection of candidates. The district court's opinion simply ignores that line in favor of some other unspecified one, without ever supplying any limiting principle—let alone one grounded in the actual text of the Election Day Statutes.

Under the district court's approach, no actual evidence of marking a ballot on or before election day is required—only *facial* compatibility with federal law was. *See* A.36-37 (holding Illinois law not preempted because it was "*facially compatible* with the relevant federal statutes" and "d[d] not *facially conflict* with" them (emphasis added)). Indeed, the district court did not even specifically conclude that Illinois's Post-

Election Receipt Deadline was actually compatible with 2 U.S.C. §§ 1, 7 and 3 U.S.C. § 1, instead focusing on *other statutory provisions*, such as the Uniformed and Overseas Citizens Absentee Voting Act of 1986 ("UOCAVA"). A.36-37.

The district court's approach also exacerbates the problem of delays in tabulating and certifying elections—which are more and more problematic as a result of increased use of mail-in balloting. Arizona's recent election for its Attorney General is a useful cautionary tale. Roughly 80% of Arizona voters vote by mail. *See Arizona Democratic Party v. Hobbs*, 18 F.4th 1179, 1181 (9th Cir. 2021). Tabulating mail-in ballots often takes substantially more time: as a result, the votes were not initially counted until November 21, 2022.[2]

The close result triggered a recount, which could not be completed until December 29, 2022—a mere *three days* before the victor was sworn

---

[2] *See* Sievers, Caitlin, *Kris Mayes comes out ahead of Abe Hamadeh, recount triggered*, Arizona Mirror (Nov. 21, 2022), https://www.azmirror.com/2022/11/21/kris-mayes-comes-out-ahead-of-abe-hamadeh-recount-triggered/.

Unlike ballot receipt, tabulation is not a required step in casting a valid vote but instead the post-voting process of aggregating the valid votes cast by voters in that election. Federal law explicitly anticipates that certification of tabulated results (unlike voting itself) will occur after Election Day. *See*, *e.g.*, 3 U.S.C. § 5.

into office, and *15 days* after presidential electors would have needed to be certified if 2022 were a presidential election year.[3] Indeed, officials are already warning that a recount in 2024 could not be accomplished before presidential electors are required to be selected.[4]

Arizona requires ballots to arrive by Election Day, however. *See* A.R.S. § 16-548(A). Pushing all deadlines back another two weeks to await late arriving ballots—as Illinois does—would have stretched the timetable beyond its breaking point.

Indeed, federal law requires that Presidential electors be certified by the second Wednesday in December—potentially as early as December 8.[5] That timeline provides barely more than 30 days after Election Day

---

[3] *See* Cohen, Ethan, *Recount confirms Democrat Kris Mayes won Arizona attorney general race*, CNN (Dec. 29, 2022), https://www.cnn.com/2022/12/29/politics/arizona-mayes-hamadeh-recount-attorney-general/index.html.

[4] *See* Sanchez, Yvonne Wingett, *Arizona recount law could delay certifying 2024 election, officials say*, Washington Post (Oct. 5, 2023), https://www.washingtonpost.com/politics/2023/10/04/arizona-recount-2024-presidential-election/.

[5] *See* 3 U.S.C. § 5 (requiring that "[n]ot later than the date that is 6 days before the time fixed for the meeting of the electors, the executive of each State shall issue a certificate of ascertainment of appointment of electors"); *id.* § 7 ("The [electoral college] electors of … shall meet and give their votes on the first Tuesday after the second Wednesday in December.").

to certify electors—including resolving any necessary recounts and legal challenges. But Illinois's Post-Election Receipt Deadline needlessly—and recklessly—prevents the counting of a significant number of votes for *almost half* of that narrow window of time.

Construing the federal Election Day Statutes to require *receipt* by election day—as the Supreme Court has already done—establishes a tight-but-achievable timetable. In contrast, the approach taken by Illinois and other states effectively invites future crises.

As the district court observed, many states (though a minority) similarly permit counting of absentee ballots received *after* Election Day. *See* A.36. All have adopted or retained those deadlines in the teeth of *Foster* and without any precedential federal court decisions approving of that practice. If this Court were to bless counting ballots received after Election Day, however, it can reasonably expect that States will take even greater liberties. And while that may not cause a disaster immediately, it would create an ever-escalating probability of an electoral crisis.

Fortunately, Congress has already foreseen and solved this problem: providing for a uniform Election Day that provides sufficient

time to tabulate ballots and certify results in time for the electoral college to function and officials to take office on the day that their terms begin. This Court need only enforce the federal Election Day Statutes as written—and as already definitively construed by the Supreme Court in *Foster*—to alleviate these problems.

Our electoral systems are already under enormous pressures without the gratuitous and illegal strains put upon them by Illinois's Post-Election Receipt Deadline and its counterparts elsewhere. However well-intentioned that deadline might be, it is as reckless as it is lawless.

## CONCLUSION

For the foregoing reasons, this Court should hold that Illinois's Post-Election Receipt Deadline violates the Federal Election Day statutes.

Respectfully submitted,

s/ Drew C. Ensign

Drew C. Ensign
202 E. Earll Drive
Suite 490
Phoenix, Arizona 85004
Telephone: (602) 492-5969
Fax: (406) 447-2204
drewensignlaw@gmail.com

*Counsel for Amicus Curiae RITE*

Dated:  October 10, 2023

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B), I hereby certify that this brief is proportionally spaced, 14-point Century Schoolbook font. Pursuant to Federal Rule of Appellate Procedure 32(g)(1) and per Microsoft Word count, the brief is within the word limit at 4,241 words excluding tables and certificates.

s/ Drew C. Ensign
Drew C. Ensign

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of October, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

s/ Drew C. Ensign
Drew C. Ensign